UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**SUZIE DICKARD,**

    **Plaintiff,**

                                                                     **Case Number:**

**v.**

**B AND B OIL CO., INC.**

    **Defendants.**

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, SUZIE DICKARD, hereby brings this action for damages against Defendants, B AND B OIL CO, INC. ("B and B"), and alleges Defendants violated both the Florida's Private Whistleblower Act ("FPWBA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). In support of her allegations, Plaintiff states as follows:

### Parties

1. Plaintiff is a qualified female who was employed by Defendant as a business development manager.

2. Defendant is a large oil and petroleum distributor in Jacksonville, Florida that employs more than 50 people.

## Jurisdiction

3. Defendant is a foreign, for-profit corporation headquartered in East Point, Georgia.

4. Defendant operates and maintains a petroleum distribution facility in Jacksonville, Florida.

5. Defendant conducts business in among other places, Jacksonville, Florida.

6. Defendant employed Plaintiff in its facility located in Jacksonville, Florida.

7. Plaintiff performed services for Defendant, as an employee, in Jacksonville, Florida.

8. Plaintiff brings this action against Defendant pursuant to the COBRA.

9. Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

10. Defendant is an Employer as defined by the COBRA.

11. Defendant is a Plan Administrator as defined in the COBRA.

12. The Court has jurisdiction as the unlawful employment practices took place in Jacksonville, Florida.

## Factual Allegations

13. On or about October 2020, Plaintiff applied for an open position posted by Defendant. The position was for a business development manager.

14. Plaintiff submitted her resume and application to B and B.

15. Plaintiff was interviewed by B and B executives.

16. On or about November 2, 2020, B and B hired Plaintiff as a business development manager.

17. While Plaintiff was employed by Defendant, Plaintiff was responsible for communicating with Defendant's drivers.

18. As a critical part of Defendant's business enterprise, Defendant employs drivers to transport oil and petroleum. Defendant's truck drivers drive trucks that are heavier than 10,001 pounds.

19. Defendant's trucks are commercial, property carrying motor vehicles, as the trucks transport petroleum to Defendant's customers for compensation.

20. During discussions with Defendant's truck drivers, Plaintiff learned that Defendant regularly demanded that Defendant's truck drivers drive more time than is allowed by the Department of Transportation.

21. Defendant's truck drivers expressed fear and concern to Plaintiff about Defendant requiring the truck drivers to drive beyond the legal limit.

22. Defendant's truck drivers, although fearful, hauled loads for Defendant, at Defendant's specific request, that caused the truck drivers to drive beyond the driving hours limitations established by 49 C.F.R. § 395.3.

23. 49 C.F.R. § 395.3 limits commercial truck drivers to driving a maximum of 11 hours within a 14-hour window.

24. Plaintiff complained to Defendant about Defendant's mandate that employees drive beyond the limitations established by 49 C.F.R. § 395.3.

25. Plaintiff objected to Defendant's practice of mandating truck drivers to haul loads that caused drivers to drive beyond the hour restrictions established by 49 C.F.R. § 395.3.

26. Plaintiff objected to Defendant's practice of causing its truck drivers to haul loads that caused drivers to drive beyond the hour restrictions established by 49 C.F.R. § 395.3.

27. Defendant's truck drivers often drove beyond the hour restrictions established by 49 C.F.R. § 395.3.

28. Plaintiff initially made her complaints and objections regarding Defendant's violations of 49 C.F.R. § 395.3 to the Defendant's operations manager in May 2021.

29. However, Defendant's Operations Manager continued the practice of ordering and causing Defendant's truck drivers to drive beyond the hour restrictions contained in 49 C.F.R. § 395.3.

30. In June 2021 and July 2021, Plaintiff made her complaints and objections directly to Defendant's executives, including John Wallace (Co-Owner), Charles Granger (Co-Owner), and Ed Ball (Regional Manager). Specifically, Plaintiff complained and objected to Defendant's practice of causing its truck drivers to drive beyond the hour restrictions established by 49 C.F.R. § 395.3.

31. Plaintiff's complaints about Defendant's violation of 49 C.F.R. § 395.3 were made in good faith and with pure intentions.

32. Plaintiff was an employee in good standing at all times during her employment with Defendant. Plaintiff did not receive any disciplinary actions, performance improvement plans, written warnings, or performance-based reprimands during her employment with Defendant.

33. During Plaintiff's employment with Defendant, Plaintiff was met and exceeded the goals set for her by Defendant. Indeed, Plaintiff

regularly received commissions from Defendant because Plaintiff met and exceeded Defendant's goals for Plaintiff.

34. Plaintiff had no expectation of termination at the time she made her complaints about violations of 49 C.F.R. § 395.3.

35. However, on July 13, 2021, Defendant terminated Plaintiff's employment with extreme prejudice and without legitimate cause. Defendant did not provide Plaintiff with any legitimate reason for the termination.

36. Defendant terminated Plaintiff's employment just weeks after Plaintiff complained to Defendant's executives about Defendant's violations of 49 C.F.R. § 395.3.

37. Defendant terminated Plaintiff's employment to both punish Plaintiff for the complaints she made regarding 49 C.F.R. § 395.3 and to prevent Plaintiff from making future complaints.

38. Defendant's termination of Plaintiff's employment was an adverse action and caused Plaintiff to suffer financial and emotional damages.

39. Defendant's termination of Plaintiff's employment was a qualifying event entitling Plaintiff to receive a COBRA notice of benefits.

40. As of the time of this filing, Plaintiff has not received any notice – COBRA or otherwise – from Defendant informing Plaintiff that she

no longer has insurance benefits through Defendant or can elect COBRA benefits.

41. Defendant should have provided, or caused to be provided, a notice informing Plaintiff that her health insurance had been canceled and that Plaintiff could elect to continue her medical coverage via COBRA.

42. During Plaintiff's employment with Defendant, Plaintiff participated in Defendant's group health plan within the meaning of 29 U.S.C. § 1167(1).

43. Defendant is the sponsor and administrator of the group health plan and was subject to the continuation of coverage and notice requirements of COBRA.

44. Plaintiff experienced a qualifying event as defined by 29 U.S.C. § 1163, and Defendant was aware that Plaintiff had experienced such a qualifying event.

45. Because of Plaintiff's qualifying event, Plaintiff was entitled to receive a COBRA notice from Defendant.

46. Defendant failed, neglected, and refused to produce any COBRA related notice to Plaintiff.

47. Defendant knew that it did not issue any COBRA notice to Plaintiff, in direct violation of 29 U.S.C. § 1163 and 29 C.F.R. § 2590.606-4 but made no attempt to correct this error.

48. In fact, Plaintiff contacted Defendant's health insurance company requesting COBRA information and was told that Defendant refused to provide Plaintiff with COBRA information.

49. These violations of COBRA were material and willful.

## COUNT I.
## RETALIATION IN VIOLATION OF FLORIDA STATUTE § 448.102.

50. The allegations of paragraphs 1 through 49 as set forth above are re-alleged in full and incorporated herein by reference.

51. Plaintiff was employed by Defendant as a business development manager.

52. During Plaintiff's employment with Defendant Plaintiff learned and observed Defendant causing its drives to drive beyond the hour restrictions established by 49 C.F.R. § 395.3.

53. Plaintiff complained and objected – in good faith - to Defendant's illegal policy of causing its truck drivers to drive beyond the hour restrictions established by 49 C.F.R. § 395.3.

54. Plaintiff's complaints were made directly to Defendant's executive leadership.

55. Plaintiff's complaints about Defendant's violations of 49 C.F.R. § 395.3 were protected activities.

56. Defendant was enraged that Plaintiff objected to Defendant's repeated violations of 49 C.F.R. § 395.3.

57. Defendant then terminated Plaintiff's employment just a few weeks after Plaintiff complained to Defendant's executive leadership about Defendant's violations of 49 C.F.R. § 395.3.

58. Defendant's termination of Plaintiff's employment was an adverse action as it deprived Plaintiff of the benefits of employment.

59. But for Plaintiff's complaints, Defendant would not have terminated Plaintiff's employment. Indeed, at the time of Plaintiff's termination, Plaintiff was an employee in good standing without any expectation of termination.

60. Plaintiff was damaged financially and emotionally as a direct result of Defendant's decision to terminate her employment.

## COUNT II
## VIOLATION OF 29 U.S.C. § 1166 (a) and 29 C.F.R. §. 2590.606-4

61. Plaintiff hereby reincorporates all paragraphs 1-49 herein and states as follows:

62. Plaintiff was employed by Defendant.

63. Defendant employed more than 20 employees during Plaintiff's employment.

64. Defendant is the administrator of Defendant's group health medical insurance program.

65. Plaintiff participated in Defendant's group health medical insurance program.

66. Defendant terminated Plaintiff's employment on July 13, 2021.

67. Plaintiff's termination was a qualifying event as defined in 29 C.F.R. 2590.606-4

68. Plaintiff was entitled to receive a COBRA notice informing her that her medical insurance benefits were being terminated within 14 days of her termination.

69. Plaintiff was entitled to receive a COBRA notice informing her of the option to maintain her medical insurance benefits within 14 days of her termination.

70. Defendant did not provide Plaintiff with any COBRA notice concerning the termination of her medical insurance benefits or the opportunity to continue her medical insurance benefits.

71. Plaintiff has been damaged by Defendant's failure and refusal to provide Plaintiff with a COBRA notice.

WHEREFORE, Plaintiff demands trial by jury and judgment for damages against Defendant together with back pay, front pay, reinstatement, interest, liquidated damages, emotional damages, compensatory damages, costs and attorney's fees and other relief permitted by law.

DATED this 5th day of January , 2022

**Respectfully,**

<u>/S/ Kyle J. Lee</u>
Kyle J. Lee, Esq.
FLBN: 105321
LEE LAW, PLLC
1971 West Lumsden Road, Suite 303
Brandon, Florida 33511
Telephone: (813) 343-2813
Kyle@KyleLeeLaw.com